In the

# United States Court of Appeals

## For the Seventh Circuit

No. 25-2087

JASON FRANCO and ABIGAIL FRANCO,

*Plaintiffs-Appellants*,

*v.*

CHOBANI, LLC,

*Defendant-Appellee*.

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 1:23-cv-03047 — **John J. Tharp, Jr.**, *Judge*.

ARGUED FEBRUARY 20, 2026 — DECIDED JULY 27, 2026

Before ROVNER, KIRSCH, and MALDONADO, *Circuit Judges*.

KIRSCH, *Circuit Judge*. A federal regulation requires that foods advertised as sugar free contain less than a half gram of sugar. 21 C.F.R. § 101.9(c)(1), (6)(ii). Chobani, LLC sold a yogurt that it advertised as sugar free—Chobani Zero Sugar Yogurt—but the yogurt included four grams per serving of allulose, a naturally occurring sweetener. Jason and Abigail Franco bought Chobani's product, and (hoping to represent a class of similarly situated consumers) want to hold the com-

pany liable for deceptive marketing under dozens of state consumer protection laws. Whether they can pursue those claims depends on if allulose is a sugar under federal law. If allulose qualifies, the Francos' state-law claims may proceed; if not, then the Federal Food, Drug, and Cosmetic Act of 1938 expressly preempts this action.

Chobani moved to dismiss the Francos' claims under Federal Rule of Civil Procedure 12(b)(6) and argued that the suit was preempted. Because the complaint alleged everything necessary to evaluate the affirmative defense, see *Sidney Hillman Health Ctr. of Rochester v. Abbott Lab'ys, Inc.*, 782 F.3d 922, 928 (7th Cir. 2015), the district court ruled on the motion. The court deferred to enforcement guidance from the United States Food and Drug Administration, found that the Francos' claims were preempted, and dismissed the case. We reverse. Allulose is a sugar under the relevant federal regulation and the Francos plausibly alleged consumer deception, which means their suit may proceed in the district court.

We review a district court's dismissal for failure to state a claim de novo. *Fosnight v. Jones*, 41 F.4th 916, 921 (7th Cir. 2022). To withstand dismissal, a complaint must "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). We accept all well-pleaded allegations of fact as true and draw all reasonable inferences in favor of the Francos. *Alarm Detection Sys., Inc. v. Village of Schaumburg*, 930 F.3d 812, 819 (7th Cir. 2019).

Chobani argues that dismissal was appropriate both because the Francos' claims are preempted and because the deception alleged is based on unreasonable or fanciful interpretations of Chobani's labels. While the district court did not address whether the Francos had plausibly alleged deception,

we may affirm the judgment below on any ground supported by the record. *Bradley Hotel Corp. v. Aspen Specialty Ins. Co.*, 19 F.4th 1002, 1006 (7th Cir. 2021). We consider both arguments in turn.

I

A

The Supremacy Clause of the United States Constitution says that, where federal and state law conflict, federal law prevails and state law is preempted. U.S. Const., Art. VI, cl. 2; *McHenry County v. Kwame Raoul*, 44 F.4th 581, 587 (7th Cir. 2022). While preemption is an affirmative defense that a complaint does not need to anticipate, see *Bausch v. Stryker Corp.*, 630 F.3d 546, 561 (7th Cir. 2010), the district court found (and the Francos do not dispute) that the allegations in the complaint set forth everything necessary to decide the preemption question.

Congress did not want to allow states to impose disclosure requirements on packaged food products that were distinct from federal standards (which would have meant manufacturers having to print many types of labels). See *Turek v. Gen. Mills. Inc.*, 662 F.3d 423, 426 (7th Cir. 2011). To prevent that outcome, the Federal Food, Drug, and Cosmetic Act of 1938 (FDCA), 21 U.S.C. § 301 *et seq.*, includes an express preemption provision. See *id.* at § 343-1(a). This part of the statute allows states to impose food labeling requirements that are identical to federal requirements but preempts other standards. See *Bell v. Publix Super Markets, Inc.*, 982 F.3d 468, 484 (7th Cir. 2020).

The FDCA authorizes the FDA to establish rules for the labeling of food. Relevant here, the FDA may regulate the

contents of the Nutrition Facts panel on product packaging, 21 U.S.C. § 343(q), and the agency may also set standards for labels characterizing the amount of certain nutrients, including sugar, *id.* § 343(r). Using this authority, the FDA issued two regulations about how products must inform and advertise to consumers about sugar content.

First, 21 C.F.R. § 101.9(c)(6)(ii) requires that the Nutrition Facts panel include "[a] statement of the number of grams of sugars in a serving, except that the label declaration of sugars content is not required for products that contain less than 1 gram of sugars in a serving if no claims are made about sweeteners, sugars, or sugar alcohol content." Section 101.9(c)(6)(ii) defines "[t]otal sugars" as "the sum of all free mono- and disaccharides (such as glucose, fructose, lactose, and sucrose)."

Second, the FDA regulates when food may be labeled sugar free. See *id.* § 101.60(c)(1). This regulation says that a food may not be labeled "sugar free" or "zero sugar" (or similar terms) unless it "contains less than 0.5 g of sugars, as defined by § 101.9(c)(6)(ii)," and meets other requirements. *Id.*

The Francos sued Chobani under state law, alleging that by labeling its products sugar free yet including allulose in the recipe, Chobani deceived them and violated various state consumer protection laws. Whether those claims run afoul of the FDCA's express preemption provision depends on if allulose is a sugar within the meaning of § 101.9(c)(6)(ii). If it is, then Chobani's sugar free labels were likely prohibited by the FDA's labeling requirements and the Francos' state-law claims (seeking to enforce identical requirements) may proceed. If, however, allulose isn't a sugar under federal law, then the suit goes beyond federal food labeling requirements and is preempted.

Interpreting the law is a job for the court. See *Kisor v. Wilkie*, 588 U.S. 558, 574–75 (2019); *Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 387 (2024). But we are not required to ignore the FDA's perspective about the meaning of a regulation the agency drafted, see *Loper Bright*, 603 U.S. at 388 (discussing *Skidmore v. Swift & Co.*, 323 U.S. 134 (1944)), and at times deference to an agency's interpretation of an ambiguous rule can be appropriate. See *Kisor*, 588 U.S. at 573–80 (discussing *Auer v. Robbins*, 519 U.S. 452 (1997)).

On several occasions, the FDA has expressed a view about whether allulose is a sugar under § 101.9(c)(6)(ii). In its 2016 rulemaking, the agency observed that "the final rule does not reach a decision as to whether Allulose should be excluded from the [definition] of sugar[] … , and Allulose, as a monosaccharide, must be included in the [Total Sugars] declaration … pending any future rulemaking that would otherwise exclude this substance from the declaration." Food Labeling: Revision of the Nutrition and Supplement Facts Labels, 81 Fed. Reg. 33,742, 33,795–96 (May 27, 2016).

Four years later, the FDA issued industry guidance on the topic (the Allulose Guidance). The agency provided its "current view on the declaration of allulose on Nutrition and Supplement Facts labels" and advised "manufacturers of [FDA's] intent to exercise enforcement discretion for the exclusion of allulose from the amount of 'Total Sugars' and 'Added Sugars' declared on the label … pending review of the issues in a rulemaking." United States FDA, The Declaration of Allulose and Calories from Allulose on Nutrition and Supplement Facts Labels: Guidance for Industry 1 (Oct. 2020). The FDA wrote that it had "traditionally determined what is captured under the 'Total Sugars' declaration on [food labels] by chem-

ical structure," but that based on novel sugars like allulose, "we should consider not only the chemical structure of sugars, but also other evidence, including their association with dental caries and how they are metabolized in the body … when determining whether a sugar should be included" on the label. *Id.* at 6. The FDA concluded that it would not enforce labeling requirements if manufacturers excluded allulose from the amount of total sugars "pending future rulemaking." And, as the FDA observes, the agency has not yet engaged in further rulemaking relevant to its definition of total sugars.

At oral argument, both parties agreed that seeking the FDA's perspective in this case would be helpful. Because we believed the FDA's "body of experience and informed judgment" could be useful in understanding the regulations at issue, we asked the FDA to weigh in on this appeal. *Skidmore*, 323 U.S. at 140; *Loper Bright*, 603 U.S. at 402 ("Although an agency's interpretation … cannot bind a court, it may be especially informative to the extent it rests on factual premises within the agency's expertise.") (citation modified). The agency filed an amicus brief and took the position that the text of § 101.9(c)(6)(ii) is unambiguous, and that total sugars as defined in that regulation include all monosaccharides, including allulose. Brief for the United States as Amicus Curiae at 11–12, *Franco v. Chobani, Inc.* (No. 25-2087). The FDA reasoned that the "such as" parenthetical at the end of § 101.9(c)(6)(ii) was merely a list of non-exhaustive, illustrative examples, and not (as the district court found) a limitation on sugars based on the physiological characteristics that the listed substances shared. *Id.* at 15–20. The agency also noted that the Allulose Guidance (to which the district court deferred under *Auer*) was not an interpretation of § 101.9(c)(6)(ii) but was in-

stead an announcement of the agency's enforcement position. *Id*. at 20–22.

B

We find the FDA's reading of § 101.9(c)(6)(ii) persuasive. See *Skidmore*, 323 U.S. at 139–40; *Loper Bright*, 603 U.S. at 402. The agency's brief is thorough, its reasoning is valid, and its position is consistent with earlier FDA statements about allulose and § 101.9(c)(6)(ii). See *Skidmore*, 323 U.S. at 140. The regulation defines "Total Sugars" as "the sum of all free mono- and disaccharides (such as glucose, fructose, lactose, and sucrose)." There's no dispute that allulose is a monosaccharide. Because the definition includes every monosaccharide and the following parenthetical is merely a list of examples, allulose is a sugar under § 101.9(c)(6)(ii).

Chobani's alternative interpretation makes much of the parenthetical "(such as glucose, fructose, lactose, and sucrose)." Relying on the surplusage and noscitur a sociis canons, Chobani contends that this parenthetical must be something more than a list of examples, and is best understood as a limitation on the definition of total sugars. See also *Freeman v. Quicken Loans, Inc.*, 566 U.S. 624, 635 (2012) (stating that the canon against surplusage favors the interpretation which avoids making some part of a law meaningless); *Yates v. United States*, 574 U.S. 528, 543 (2015) (explaining that noscitur a sociis is the principle that "a word is known by the company it keeps"). To count as a sugar under § 101.9(c)(6)(ii), Chobani posits, a substance must present the same nutritional characteristics as glucose, fructose, lactose, and sucrose.

It's true, as Chobani argues, that we must read the whole of § 101.9(c)(6)(ii)—we cannot simply stop at "all free mono-

and disaccharides." See *Bria Health Servs., LLC v. Eagleson*, 950 F.3d 378, 382–83 (7th Cir. 2020) (noting that the same rules apply to the interpretation of statutes and regulations, and courts should consider the entire text of a regulation). And the surplusage canon suggests that the "such as" parenthetical should have some meaning. See *Bufkin v. Collins*, 604 U.S. 369, 386 (2025). But redundancy is common in the law, see *Rimini St., Inc. v. Oracle USA, Inc.*, 586 U.S. 334, 346 (2019), and "such as" doesn't always mean "of the same kind" (the definition Chobani stresses)—sometimes it merely introduces "examples of a class." *Such*, Oxford English Dictionary, https://perma.cc/96E9-GKYM (last visited July 23, 2026); see *Such as*, Merriam-Webster Dictionary, https://perma.cc/M5XP-VNMV (last visited July 23, 2026). The "such as" parenthetical, in other words, doesn't have to do as much work as Chobani wants it to (it doesn't have to restrict the definition of total sugars to substances that have similar physiological effects as glucose, fructose, lactose, and sucrose). Instead, understood merely as a list of examples, the parenthetical still has meaning. The FDA defined a class by way of chemistry; it reinforced that definition through examples, all of which share the same chemical structure.

The cases Chobani cites are distinguishable. Some of these involve laws that do not define a term, define a term only by way of a list, or where a term appears only in a list. See, e.g., *Gustafson v. Alloyd Co.*, 513 U.S. 561, 573–74 (1995); *Yates*, 574 U.S. at 543; *Easom v. US Well Servs., Inc.*, 37 F.4th 238, 242 (5th Cir. 2022). Section 101.9(c)(6)(ii) doesn't present the same interpretive problems, because this regulation defines a term and follows it with examples, which means there's no need to derive a definition from the listed examples. Similarly, cases involving concerns about overbreadth aren't on point because

Chobani hasn't asserted that a definition of sugars that includes all monosaccharides will lead to absurd results. See *Andrus v. Charlestone Stone Prods. Co.*, 436 U.S. 604, 610–11 (1978); *Oracle Int'l Corp. v. Rimini St., Inc.*, 123 F.4th 986, 994 (9th Cir. 2024). And in defining total sugars, the FDA specifically invoked the language of chemistry, which means decisions favoring common parlance meanings aren't persuasive, either. See *Robertson v. Salomon*, 130 U.S. 412, 414 (1889); *Nix v. Hedden*, 149 U.S. 304, 307 (1893).

Chobani correctly observes that other parts of the FDA regulations discuss the physiological impact of sugars, see, e.g., 21 C.F.R. § 101.80, and the agency's broader mandate in this area is to ensure that labeling facilitates informed consumer decision-making, 21 U.S.C. § 343(q)–(r). But this contextual evidence cannot override the plain language of § 101.9(c)(6)(ii). The agency could have defined total sugars based on physiological factors (rather than chemical makeup). It did not do so in § 101.9(c)(6)(ii).

Endorsing Chobani's interpretation, the district court found § 101.9(c)(6)(ii) ambiguous and deferred under *Auer* to the FDA's Allulose Guidance. That was error for two reasons. First, (as discussed above) the regulation isn't ambiguous, and in the absence of uncertainty about what the regulation means "there is no plausible reason for deference." *Kisor*, 588 U.S. at 574–75. Second, the Allulose Guidance wasn't entitled to controlling weight because it wasn't the FDA's official position. See *id.* at 576–77. The Allulose Guidance isn't an interpretation of § 101.9(c)(6)(ii)—it's an announcement of a change in enforcement policy. See *Heckler v. Chaney*, 470 U.S. 821, 831–32 (1985) (noting that an agency decision not to enforce involves several factors, only one of which is whether a

violation has occurred); *United States v. Mead Corp.*, 533 U.S. 218, 234 (2001) (observing that courts generally do not defer to agency interpretations in enforcement guidance). And even if the Allulose Guidance had interpreted § 101.9(c)(6)(ii) to exclude allulose, deference would have likely been inappropriate because such an interpretation would have conflicted with the agency's prior position. See *Kisor*, 588 U.S. at 579; Food Labeling: Revision of the Nutrition and Supplement Facts Labels, 81 Fed. Reg. 33,742, 33,795–96 (May 27, 2016).

Chobani contends that it relied on the Allulose Guidance in deciding how to label its products. And Chobani says that it even secured a marketing permit from the FDA, after the agency approved Chobani's zero sugar labeling. But the Allulose Guidance was a statement about enforcement discretion, and the agency hasn't engaged in further rulemaking, which means its original definition of sugar remains in force. And the fact that one sovereign (the United States) indicated that it would not enforce its labeling requirements with respect to allulose should not have led Chobani to believe that the states would take a similar approach. Similarly, while it's reasonable that Chobani believed it was safe from federal enforcement action based on the labels that the FDA approved, the agency's marketing permit said nothing about state law consumer protection suits. Chobani is a sophisticated actor and should have been aware that the FDA's decisions about its enforcement priorities would not immunize the company from suits based on state law.

The federal requirements at issue are plain—food products cannot be labeled sugar free unless they have less than half a gram of sugar, and sugars include every monosaccharide, including allulose. See 21 C.F.R. § 101.60(c)(1), (6)(ii). The

Francos want to hold Chobani liable under state law for violating identical standards, and so their claims are not preempted. See 21 U.S.C. § 343-1(a)(5); *Turek*, 662 F.3d at 426; *Bell*, 982 F.3d at 484.

Chobani asserts that it has additional Rule 12(b)(6) arguments, including an additional theory of preemption based on the FDA's approval of its labels and the Supreme Court's recent decision in *Monsanto Co. v. Durnell*, 609 U.S. ____, 2026 WL 1825691 (June 25, 2026). Chobani correctly recognizes that it has not raised those arguments before us and will raise them instead for the first time in the district court on remand. All we need to decide now is that on this record and given the FDA's definition of total sugars, dismissal based on this theory of express preemption was not appropriate.

II

In the alternative, Chobani argues that we should affirm the dismissal of the Francos' claims because the complaint doesn't plausibly allege consumer deception. To prove their deceptive marketing claims, the Francos will eventually need to show that Chobani's advertisements were either literally false or likely to mislead reasonable consumers. See *Suchanek v. Sturm Foods, Inc.*, 764 F.3d 750, 756–57 (7th Cir. 2014) (gathering cases applying various state laws); *Beardsall v. CVS Pharmacy, Inc.*, 953 F.3d 969, 972–73 (7th Cir. 2020) (same). And, under either theory, the Francos will have to prove that there's "a probability that a significant portion of the general consuming public or of targeted consumers, acting reasonably in the circumstances, could be misled." *Bell*, 982 F.3d at 474–75 (citation modified).

We're not at the stage of the case where proof is required, and all the Francos must do now is plausibly allege consumer deception. See *Iqbal*, 556 U.S. at 678. When a plaintiff bases "deceptive advertising claims on unreasonable or fanciful interpretations of labels or other advertising, dismissal on the pleadings may well be justified." *Bell*, 982 F.3d at 477. But questions about how reasonable consumers understand labels "may not be answered as a matter of law simply because lawyers can construe an ambiguous claim in a way that would not be deceptive," and "plaintiffs are entitled to present evidence on how consumers actually understand [allegedly deceptive] labels." *Id.* at 480 (citation modified).

According to the complaint, the labels on Chobani's yogurt said the product was sugar free, but it in fact had four grams per serving of sugar in the form of allulose. There's also an allegation that consumers across the country have been deceived into buying Chobani's products based on the reasonable belief that they were, in fact, sugar free. Chobani contends that reasonable consumers would not be deceived by a product promising no sugar but containing allulose (a sweetener that, according to Chobani, doesn't have the same harmful effects as other sugars). More specifically, Chobani says consumers don't care about the existence of monosaccharides in their food but are instead concerned with avoiding the adverse health consequences associated with traditional sugars.

Chobani's arguments miss the mark. Whether reasonable consumers *care* about the existence of allulose in their yogurt isn't the same thing as asking whether reasonable consumers would be *deceived* by it. The Francos have alleged that consumers were fooled by Chobani's labels, and given the absolute promise on Chobani's products (sugar free), we do not

find that allegation implausible. See *Bell*, 982 F.3d at 480–81 (finding that a complaint alleged deception where a label promised "100% Grated Parmesan Cheese," but the product contained additives); *Dumont v. Reily Foods Co.*, 934 F.3d 35, 41 (1st Cir. 2019) (finding it not unreasonable for a consumer to read "Freshly Ground 100% Arabica Coffee" to mean "that the package contains only coffee (and Arabica coffee at that), with no nuts (or anything else)"); *Schering-Plough Healthcare Prods., Inc. v. Schwarz Pharma, Inc.*, 586 F.3d 500, 512–13 (7th Cir. 2009) (discussing the literal falsity doctrine in the context of the Lanham Act and observing that the literal falsity involves a "patently false statement that means what it says to any linguistically competent person"). Perhaps consumers aren't deceived by Chobani's products because they don't understand promises about sugars to mean allulose. But how reasonable consumers perceive Chobani's labels and make decisions about its products are questions of fact that cannot be answered now. After discovery, the Francos must prove that reasonable consumers could be misled by Chobani's promises.

REVERSED